## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | | |
|---|---|---|
| THE BANK OF NEW YORK | § | |
| MELLON TRUST COMPANY, N.A. | § | |
| AS TRUSTEE FOR MORTGAGE | § | |
| ASSETS MANAGEMENT SERIES I | § | |
| TRUST, | § | |
|     Plaintiff, | § | Civil Action No. 6:21-cv-00344 |
| | § | |
| v. | § | |
| | § | |
| LINDA HARPER KUNKEL AND | § | |
| NANCY HARPER STRAKA, | § | |
|     Defendants. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

The Bank of New York Mellon Trust Company, N.A. as Trustee for Mortgage Assets

Management Series I Trust ("Plaintiff" or "BNYM"), files this *Plaintiff's Original Complaint*

against Linda Harper Kunkel and Nancy Harper Straka, and respectfully shows the Court:

## I.    PROPERTY

1.      This proceeding concerns the real property and improvements commonly known as

1830 East Young Avenue, Temple, Texas 76501 and more particularly described in the Loan

Agreement made the subject of this action as:

> BEING A 3.877 ACRE TRACT OF LAND SITUATED IN THE
> H.B. BALCH SURVEY, ABSTRACT NO. 976, BELL COUNTY,
> TEXAS AND BEING A PART OF PORTION OF THAT
> CERTAIN 46.46 ACRE TRACT OF LAND DESCRIBED IN
> DEED FROM WILLIAM HOWARD FOWLER AND WIFE,
> ELLEN FRANCES FOWLER TO AUTHUR MIKE MUREHEAD
> AND WIFE, CLARA L. MUREHEAD DATED MARCH 2, 1965
> AND BEING OF RECORD IN VOLUME 927, PAGE 327, DEED
> RECORDS OF BELL COUNTY, TEXAS AND BEING MORE
> PARTICULARLY DESCRIBED BY METES AND BOUNDS AS
> FOLLOWS:
>
> BEGINNING AT A 5/8" IRON ROD FOUND IN THE WEST
> BOUNDARY LINE OF SAID 46.46 ACRE TRACT AND LYING
> IN THE WEST BOUNDARY LINE OF THAT CERTAIN 11.04
> ACRE TRACT DESCRIBED IN A WARRANTY DEED IN LIEU

OF FORECLOSURE FROM KENNETH KUNKEL AND WIFE, LINDA KUNKEL TO ARTHUR MIKESON MUREHEAD AND WIFE, CLARA MUREHEAD, DATED SEPTEMBER 6, 1990, AND BEING OF RECORD IN VOLUME 2664, PAGE 423, DEED RECORDS OF BELL COUNTY, TEXAS; SAID 5/8" IRON ROD FOUND BEING THE NORTHWEST CORNER OF THAT CERTAIN 1.70 ACRE TRACT (EXHIBIT "A") DESCRIBED IN A WARRANTY DEED FROM ARTHUR MIKESON MUREHEAD AND WIFE, CLARA MUREHEAD TO BILL M. HARTWELL DATED MARCH 29, 1995 AND BEING OF RECORD IN VOLUME 3291, PAGE 543, DEED RECORDS OF BELL COUNTY, TEXAS FOR CORNER;

THENCE N. 19°00'00" E., (BEARING BASE) 408.31 FEET WITH SAID WEST BOUNDARY LINES AS FENCED AND EVIDENCED ON THE GROUND TO A 1/2" IRON FOUND FOR CORNER;

THENCE S. 86°04'01" E., (CALLS S. 86°06' E.) 9.08 FEET (CALLS 9.1 FEET) AS FENCED AND EVIDENCED ON THE GROUND TO A 1/2" IRON ROD FOUND FOR CORNER;

THENCE N. 11°04'00" E., (CALLS N. 12°36' E.) 176.32 FEET AS FENCED AND EVIDENCED ON THE GROUND TO A 1/2" IRON ROD SET AT THE CENTER OF AN UNNAMED TRIBUTARY OR CREEK FOR CORNER;

THENCE DEPARTING FROM SAID WEST BOUNDARY LINES AND WITH SAID TRIBUTARY OR CREEK THE FOLLOWING FOUR (4) CALLS:

(1)     S. 56°41'19" E. 118.49 FEET TO A 1/2" IRON ROD SET FOR CORNER;

(2)     N. 87°08'00" E. 41.96 FEET TO A 1/2" IRON ROD SET FOR CORNER;

(3)     S. 54°21 '45" E., 158.93 FEET TO A 1/2" IRON ROD SET FOR CORNER;

(4)     S. 34°03'56" E., 130.56 FEET TO A 1/2" IRON ROD SET IN THE EAST BOUNDARY LINE OF SAID 11.04 ACRE TRACT AND BEING THE WEST BOUNDARY LINE OF THAT CERTAIN 16.479 ACRES OF LAND DESCRIBED IN A CONTRACT OF SALE AND PURCHASE FROM TEXAS VETERANS LAND PROGRAM TO WILLIAM HARVEY HARPER DATED SEPTEMBER 30, 1983 AND BEING OF RECORD IN VOLUME 1982, PAGE 832, DEED RECORDS OF BELL COUNTY, TEXAS FOR CORNER;

THENCE S. 15°43'07" W. (DEED CALL IN VOLUME 1982, PAGE 832) (CALLS S. 18°24'30" W., IN VOLUME 2664, PAGE 423) 222.87 FEET WITH THE COMMON BOUNDARY LINES AS FENCED AND EVIDENCED ON THE GROUND TO A 1/2" IRON ROD SET AT THE MOST EASTERLY SOUTHEAST CORNER OF SAID 11.04 ACRE TRACT AND BEING IN THE NORTH BOUNDARY LINE OF THAT CERTAIN 4 ACRES OF LAND DESCRIBED IN A WARRANTY DEED WITH VENDOR'S LIEN FROM ARTHUR MIKESON MUREHEAD, AND WIFE CLARA MUREHEAD TO WILLIAM H. HARPER AND WIFE, VERA A. HARPER DATED DECEMBER 16, 1983 AND BEING OF RECORD IN VOLUME 1963, PAGE 88, DEED RECORDS OF BELL COUNTY, TEXAS FOR CORNER;

THENCE N. 71°35'30" W., 200.85 FEET DEPARTING FROM SAID WEST BOUNDARY LINE AND WITH SAID NORTH BOUNDARY LINE AND WITH A SOUTHERLY BOUNDARY LINE OF SAID 11.04 ACRE TRACT TO A 1/2" IRON ROD SET FOR ALL CORNER;

THENCE S. 18°24'30" W., 221.50 FEET WITH THE MOST WESTERLY WEST BOUNDARY LINE OF SAID TRACT DESCRIBED IN VOLUME 1963, PAGE 88 AND EAST BOUNDARY LINE OF SAID 11.04 ACRE TRACT TO A 1/2" IRON ROD FOUND AT A 3" METAL POST BEING THE MOST WESTERLY SOUTHWEST CORNER OF SAID TRACT DESCRIBED IN VOLUME 1963, PAGE 88; SAID 1/2" IRON ROD FOUND BEING THE NORTHEAST CORNER OF SAID 1.70 ACRE TRACT FOR CORNER;

THENCE N. 71°21'50" W. 197.38 FEET, (CALLS N. 71°28' W. 197.5 FEET IN VOLUME 3291, PAGE 543) DEPARTING FROM AN EAST BOUNDARY LINE OF SAID 11.04 ACRE TRACT AND WITH THE NORTH BOUNDARY LINE OF SAID 1.70 ACRE TRACT TO THE POINT OF BEGINNING AND CONTAINING 3.877 ACRES OF LAND.

(the "Property").

## II.   PARTIES

2.      Plaintiff BNYM appears through the undersigned counsel.

3.      William H. Harper was co-owner of the Property with Vera A. Harper. William H. Harper died on March 30, 2005. Upon information and belief, no probate is open for William H. Harper's estate in Bell County, which is the county in which the Property is located and William

H. Harper died. Accordingly, there is no executor or administrator to be made a party in this proceeding as the personal representative of the William H. Harper estate.

4.      Vera A. Harper was mortgagor under the Loan Agreement at issue and secured by the Property. Vera A. Harper (together with William H. Harper, "Decedents") died on November 17, 2020. Upon information and belief, no probate is open for Vera A. Harper's estate in Bell County, which is the county in which the Property is located and Vera A. Harper died. Accordingly, there is no executor or administrator to be made a party in this proceeding as the personal representative of Vera A. Harper's estate.

5.      Pursuant to Texas Estates Code sections 101.001 and 101.051, Decedents' heirs at law ("Heirs") acquired all of Decedents' estates immediately upon their deaths. Each Heir is made a party in this proceeding pursuant to Texas Civil Practice and Remedies Code section 17.002.

6.      Defendant Linda Harper Kunkel is a daughter and heir of Decedents. Defendant Linda Harper Kunkel may be served with process at 1940 East Young Avenue, Temple, Texas 76501 or such other place as she may be found. Summons is requested.

7.      Defendant Nancy Harper Straka is a daughter and heir of Decedents. Defendant Nancy Harper Straka may be served with process at 2114 Pamela Road, Temple, Texas 76502 or such other place as she may be found. Summons is requested.

### III.    JURISDICTION AND VENUE

8.      This Court has jurisdiction over this dispute under 28 U.S.C. section 1332 because there is complete diversity between BNYM and Defendants and the amount in controversy exceeds $75,000.00. Due to Defendants' conduct, as alleged herein, BNYM has the right to foreclose upon the Property, which is real property securing the repayment of a debt pursuant to a security instrument lien.

9.      Plaintiff Bank of New York Mellon Trust Company, N.A. as Trustee for Mortgage Assets Management Series I Trust ("BNYM") is the trustee of a trust. A trustee who possesses

"customary powers to hold, manage, and dispose of assets" is the real party in interest to a suit. *Navarro Sav. Assoc. v. Lee*, 446 U.S. 458, 464 (1980); *see BAC Home Loans Servicing, LP v. Tex. Realty Holdings, LLC*, 901 F. Supp. 2d 884, 907–09 (S.D. Tex. 2012). "[W]hen a trustee files a lawsuit in her name, her jurisdictional citizenship is the State to which she belongs." *Bynane v. Bank of N.Y. Mellon*, 866 F.3d 351, 357 (5th Cir. 2017) (quoting *Justice v. Wells Fargo Bank National Association*, 674 F. App'x 330, 332 (5th Cir. 2016) (quoting *Americold Realty Tr. v. ConAgra Foods, Inc.*, 136 S. Ct. 1012, 1016 (2016))). A national banking association is considered a citizen of the state in which it is located, as determined by the state of its main office in the articles of association. *Wachovia Bank, NA v. Schmidt*, 546 U.S. 303, 318 (2006) (citing 28 U.S.C. § 1348). Because BNYM's main office is in New York, Plaintiff is a citizen of New York for diversity purposes. *See FFGGP, Inc. v. BNYM Nat'l Tr. Co.*, Civil Action No. 3:16-CV-0742-M-BK, 2017 U.S. Dist. LEXIS 162336, at *6 (N.D. Tex. Sep. 6, 2017).

10.     Defendants are individuals and citizens of the state of Texas, and no Defendant is a citizen of the state of New York. Defendant Linda Harper Kunkel is an individual and citizen of the state of Texas. Defendant Nancy Harper Straka is an individual and citizen of the state of Texas.

11.     The amount in controversy exceeds $75,000.00. Due to Defendants' conduct, as alleged herein, Plaintiff asserts the right to foreclose upon the Property that secures the repayment of the debt pursuant to the security instrument lien. "[W]hen the validity of a contract or a right to property is called into question in its entirety, the value of the property controls the amount in controversy." *Nationstar Mortg. LLC v. Knox*, 351 F. App'x 844, 848 (5th Cir. 2009) (citing *Waller v. Prof'l Ins. Corp.*, 296 F.2d 545, 547-48 (5th Cir. 1961)). In a foreclosure action where the plaintiff calls into question the right to own certain real property and the value of the property is a stake, "the value of the Property determines the amount in controversy." *BNYM Nat'l Tr. Co. v. Spangler*, No. SA-15-CA-356-OLG, 2015 U.S. Dist. LEXIS 183109, at *9 (W.D. Tex. 2015)

(citing *McDonald v. BNYM Nat. Trust Co.*, 3:11-CV-2691-B, 2011 U.S. Dist. LEXIS 146040 (N.D. Tex. Dec. 20, 2011) (holding that declaratory requests in foreclosure "call[] into question the right to the property in its entirety and the amount in controversy is equal to the value of the property")); *Christiana Trust v. Jacob*, No. 7:15-CV-033-DAE, 2016 U.S. Dist. LEXIS 113010, *2 n.1 (W.D. Tex. Aug. 23, 2016) (amount in controversy in suit for foreclosure is the value of the property); *see also Farkas v. GMAC Mortg., LLC*, 737 F.3d 338, 341 (5th Cir. 2013); *Johnson v. Wells Fargo Bank, N.A.*, No. 4:12-cv-768-ALM, 2013 U.S. Dist. LEXIS 41583, at *7–8 (E.D. Tex. Feb. 22, 2013). The value of a property for a diversity jurisdiction analysis may be determined by the county's central appraisal district. *Statin v. BNYM Nat'l Tr. Co.*, 599 F. App'x 545, 546–47 (5th Cir. 2014) (finding that county appraisal district assessments commonly prove the amount-in-controversy requirement); *Hearn v. BNYM Nat'l Tr. Co.*, No. 3:13-CV-2417-B, 2013 U.S. Dist. LEXIS 164084, at *12 (N.D. Tex. Nov. 18, 2013) ("The appraisal printout from the Dallas Central Appraisal District is competent evidence that this Court may rely upon in determining the amount in controversy."); *see Lovett v. HSBC Mortg. Servs.*, No. 3:13-CV-03593-O-BK, 2014 U.S. Dist. LEXIS 17083, at *10 (N.D. Tex. Jan. 27, 2014). In 2020, the Bell County Appraisal District assessed the Property at issue here at a market value of $124,666.00. A true and correct copy of property details from the Bell County Appraisal District website is attached hereto as **Exhibit A**.

12.      Venue is proper in the Western District of Texas, Waco Division because this suit concerns title to real property located in Bell County, Texas. *See* 28 U.S.C. §§ 124(a)(1), 1391(b)(2).

## IV.      SUMMARY OF FACTS

13.      On or about July 23, 1996, Decedents obtained title to the Property described above by way of a *Warranty Deed with Vendor's Lien* (the "1996 Deed"). A true and correct copy of the 1996 Deed is attached hereto as **Exhibit B**. The 1996 Deed describes the Property as being a "3.877 acre tract of land situated in the H. B. BALCH SURVEY, Abstract No. 976, Bell County, Texas."

The legal description in the 1996 Deed matches the legal description on the Deed of Trust at issue in this suit.

14.     On September 18, 2000, Decedents purchased a Waverly Crest model manufactured home with label/seal numbers RAD1141732 and RAD1141731 and serial numbers TXFLX84A16319WC11 and TXFLX84B16319WC11 (the "Manufactured Home"). A true and correct Record Detail from the Texas Department of Housing and Community Affairs Manufactured Housing Division is attached hereto as **Exhibit C**. Vanderbilt Mortgage & Finance Inc. ("Vanderbilt") held the purchase money lien on the Manufactured Home. *Id.*

15.     William H. Harper died on March 30, 2005. Upon information and belief, no probate was opened for him in Bell County, Texas, the county in which he died and where the Property is located. Accordingly, there is no executor or administrator to be made a party in this proceeding as the personal representative of William H. Harper's estate. Furthermore, upon information and belief, William H. Harper died intestate, survived by his wife Vera A. Harper and their two daughters, Linda Harper Kunkel and Nancy Harper Straka.

16.     On May 20, 2005, Vera A. Harper obtained title to three (3) tracts of land from her neighbors Kacey A. Pond and Raymond D. Pond by way of a *Special Warranty Deed* (the "Pond Deed"), described as Tracts 2, Tract 3, and Tract 4. A true and correct copy of the Pond Deed is attached hereto as **Exhibit D**. Tract 2 consisted of 1.275 acres of land; Tract 3 consisted of an access easement of 0.387 acres; and Tract 4 consisted of another access easement of 1.00 acre of land. The Pond Deed more particularly describes the three tracts as:

> TRACT 2: BEING 1.275 ACRES OF LAND, MORE OR LESS, OUT OF THE H.B. BALCH SURVEY, ABSTRACT 976, BELL COUNTY, TEXAS, BEING OUT OF AND A PART OF LOT ONE (1), BLOCK ONE (1), SHADY CREEK SUBDIVISION, A SUBDIVISION IN BELL COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT OF RECORD IN CABINET C, SLIDE 71-A, PLAT RECORDS OF BELL COUNTY, TEXAS, DESCRIBED BY METES AND BOUNDS IN FIELDNOTES ATTACHED HERETO.

TRACT 3: ACCESS EASEMENT – BEING 0.387 ACRES OF LAND, MORE OR LESS, OUT OF THE H.B. BALCH SURVEY, ABSTRACT 976, BELL COUNTY, TEXAS, BEING OUT OF AND A PART OF LOT ONE (1), BLOCK ONE (1), SHADY CREEK SUBDIVISION, A SUBDIVISION IN BELL COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT OF RECORD IN CABINET C, SLIDE 71-A, PLAT RECORDS OF BELL COUNTY, TEXAS, DESCRIBED BY METES AND BOUNDS IN FIELDNOTES ATTACHED HERETO.

TRACT 4: ACCESS EASEMENT – BEING 1.00 ACRE OF LAND, MORE OR LESS, OUT OF THE H.B. BALCH SURVEY, ABSTRACT 976, BELL COUNTY, TEXAS, DESCRIBED BY METES AND BOUNDS IN FIELDNOTES ATTACHED HERETO.

17.     On or about May 26, 2005, Vera A. Harper ("Borrower") executed an *Adjustable Rate Note (Home Equity Conversion)* ("Note") in the maximum principal amount of $168,000.00, originally payable to Financial Freedom Senior Funding Corporation, a Subsidiary of IndyMac Bank, F.S.B. ("Financial Freedom") as lender on a loan secured by the Property. A true and correct copy of the Note is attached hereto as **Exhibit E**.

18.     Concurrently with the execution of the Note, Borrower executed an *Adjustable Rate Home Equity Conversion Deed of Trust* (together with accompanying rider, "Deed of Trust" and all together with the Note, "Loan Agreement"), as grantor, granting Financial Freedom, its successors and assigns, a security interest in the Property. The Deed of Trust was recorded in the official real property records of Bell County, Texas on June 3, 2005 at volume 5720, page 642.  A true and correct copy of the Deed of Trust is attached hereto as **Exhibit F**.

19.     The Deed of Trust states that the Property is a 3.87-acre lot with a common address of 1936 East Young Street, Temple, Texas 76501. Exh. F. The Deed of Trust encumbers only the single tract of property conveyed in the 1996 Deed – which will be called "Tract 1" – without including Tract 2, on which the Manufactured Home is located, and the easements called Tract 3 and Tract 4 conveyed by the Pond Deed. Exhs. D, F. However, Tract 1 is landlocked without Tracts

2, 3, and 4, as shown by a survey conducted in October 2020 (the "2020 Survey"), a true and correct copy of which is attached hereto as **Exhibit G**. The 2020 Survey shows Tract 1 highlighted in yellow. Exh. G. Furthermore, although a home equity conversion deed of trust necessarily creates a security interest in the borrower's home, Tract 1 does not include the Manufactured Home or any other structure that might serve as Borrower's home. *Id.* Therefore the inclusion of Tract 1 in the Deed of Trust without Tracts 2, 3, and 4 resulted from inadvertent error and mutual mistake by all parties to the Deed of Trust.

20.     The mutual mistake becomes further evident in light of the *Commitment for Title Insurance* ("Commitment") issued to Financial Freedom on April 28, 2005. A true and correct copy of the Commitment is attached hereto as **Exhibit H**. The Commitment states that the land to be covered by title insurance consists of all four tracts, as opposed to the single tract, Tract 1, which is referenced in the Deed of Trust. Exh. H. The Commitment includes a legal description that incorporates Tract 1 as described in the 1996 Deed and Tracts 2, 3, and 4 as described in the Pond Deed. *Id.* The same legal description attached to the Commitment references Tracts 1-4 with a total acreage of over 6 acres, rather than 3.877 acres or 1.275 acres. A title policy was issued from the Commitment on June 13, 2005. *Id.*

21.     In the process of closing the Loan Agreement and obtaining title insurance, a survey was obtained of the Property to be encumbered (the "2005 Survey"). A true and correct copy of the 2005 Survey is attached hereto as **Exhibit I**. The survey shows Tracts 2 and 3. The Borrower resided in the Manufactured Home that was and is located on Tract 2, as shown in the Survey. The Survey also exhibits the intent of both Borrower and Financial Freedom to encumber the tracts that contain the Borrower's homestead. The Uniform Residential Appraisal Report ("Appraisal") prepared as part of the loan application process indicates that the property includes 6.21 acres and the Manufactured Home. A true and correct copy of the Appraisal is attached hereto as **Exhibit J**.

22.     Furthermore, the Loan Agreement inadvertently and through mutual mistake lists the common address of the Property as 1936 East Young Street, Temple, Texas 76501. Exh. F. The correct common address for the Property is 1830 East Young Avenue, Temple, Texas 76501. As confirmed by the Bell County Appraisal District, the Property belonging to Decedents is 1930 East Young Avenue, while 1936 East Young Avenue belongs to Kacey A. Pond and Raymond D. Pond. A true and correct copy of the property details for 1936 East Young from the Bell County Appraisal District is attached hereto as **Exhibit K**.

23.     The U.S. Department of Housing and Urban Development Settlement Statement ("HUD 1") from the origination of the Loan Agreement shows that $47,644.11 in funds were disbursed to pay off Vanderbilt's lien on the Manufactured Home. A true and correct copy of the HUD 1 is attached hereto as **Exhibit L**.

24.     Plaintiff is the beneficiary of the Loan Agreement pursuant to a series of assignments. Financial Freedom assigned the Deed of Trust to Mortgage Electronic Registration Systems, Inc. ("MERS") pursuant to a *Corporate Assignment of Deed of Trust* ("First Assignment") recorded in the official Real Property Records of Bell County, Texas as document number 2009-37986 on October 1, 2009. A true and correct copy of the First Assignment is attached hereto as **Exhibit M**. MERS assigned the Deed of Trust to the Secretary of Housing and Urban Development ("HUD") pursuant to an *Assignment of Deed of Trust* ("Second Assignment") recorded in the official Real Property Records of Bell County, Texas as document number 2015-49725 on December 31, 2015. A true and correct copy of the Second Assignment is attached hereto as **Exhibit N**. HUD assigned the Deed of Trust to CIT Bank, N.A. ("CIT Bank") pursuant to an *Assignment of Deed of Trust* ("Third Assignment") recorded in the Real Property Records of Bell County, Texas as document number 2018-00012560 on March 29, 2018. A true and correct copy of the Third Assignment is attached hereto as **Exhibit O**. CIT Bank assigned the Deed of Trust to Mortgage Assets Management, LLC ("MAM") pursuant to an *Assignment of Deed of Trust*

("Fourth Assignment") recorded in the Real Property Records of Bell County, Texas as document number 2018-36298 on August 28, 2018. A true and correct copy of the Fourth Assignment is attached hereto as **Exhibit P**. MAM assigned the Deed of Trust to Plaintiff pursuant to an *Assignment of Deed of Trust* ("Fifth Assignment") recorded in the Real Property Records of Bell County, Texas as document number 2019-21448 on May 23, 2019. A true and correct copy of the Fifth Assignment is attached hereto as **Exhibit Q**.

25.     Plaintiff is the current legal owner and holder of the Note endorsed in blank and the mortgagee as that term is defined in section 51.0001(4) of the Texas Property Code.

26.     The Loan Agreement provides that should Borrower fail to make payment on the Note when it becomes due and payable, or should Borrower fail to comply with any or all of the covenants and conditions of the Deed of Trust, then the lender may enforce the Deed of Trust by selling the Property pursuant to applicable law and in accordance with the provisions set out in the Loan Agreement.

27.     Borrower defaulted under the terms of the Loan Agreement for, among other reasons, failure to occupy the property. Notice that the Loan Agreement had become due and payable ("Demand") was served on Borrower by certified mail on or about April 12, 2018. A true and correct copy of the Demand is attached hereto as **Exhibit R**.  The default was not cured, and a *Notice of Acceleration of Loan Maturity* ("Acceleration") was served on Borrower by certified mail on or about September 13, 2018. A true and correct copy of the Acceleration is attached hereto as **Exhibit S**.

28.     Borrower failed to make payment when due on the Loan Agreement, and Plaintiff obtained an order for foreclosure in Cause No. 310,795-B in the 146th District Court for Bell County, Texas on August 29, 2019. However, the Order only grants the right to foreclose on the 3.877-acre parcel identified as Tract 1 and omits the other three (3) tracts that Plaintiff's predecessor in interest and Borrower intended to encumber with the Deed of Trust.

29.     Borrower died on November 17, 2020. Upon information and belief, no probate is open for Borrower's estate in Bell County, Texas, which is the county in which the Property is located and Borrower died. Accordingly, there is no executor or administrator to be made a party in this proceeding as the personal representative of Borrower's estate.

30.     Borrower and Defendants have enjoyed the benefit of retaining the Property and the additional three (3) tracts without curing the default on the Loan Agreement. The Loan Agreement remains in default. Though some if not all of Defendants have the use, benefit, and enjoyment of the Property, they have failed or refused to pay the debt evidenced by the Loan Agreement.

31.     Plaintiff brings this suit to reform the Deed of Trust to include all four (4) Tracts and to enforce Plaintiff's statutory probate lien on all four (4) Tracts by foreclosure on the Property and the Manufactured Home against the interest of Defendants, who are Decedents' heirs.

## V.     CAUSES OF ACTION

### A.  <u>Reformation of Property Description in Deed of Trust</u>

32.     The foregoing paragraphs are incorporated by reference for all purposes.

33.     Based partly on the Commitment and the HUD 1 (Exhs. H, L) showing the agreement of the parties to the Loan Agreement as to the Property to be encumbered by the Deed of Trust, the Deed of Trust should be reformed to include the following correct legal description:

> TRACT 1:
>
> SITUATED IN THE COUNTY OF BELL, STATE OF TEXAS, TO-WIT:
>
> BEING A 3.877 ACRE TRACT OF LAND SITUATED IN THE H.B. BALCH SURVEY, ABSTRACT NO. 976, BELL COUNTY, TEXAS AND BEING A PART OF PORTION OF THAT CERTAIN 46.46 ACRE TRACT OF LAND DESCRIBED IN DEED FROM WILLIAM HOWARD FOWLER AND WIFE, ELLEN FRANCES FOWLER TO AUTHUR MIKE MUREHEAD AND WIFE, CLARA L. MUREHEAD DATED MARCH 2, 1965 AND BEING OF RECORD IN VOLUME 927, PAGE 327, DEED

RECORDS OF BELL COUNTY, TEXAS AND BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS:

BEGINNING AT A 5/8" IRON ROD FOUND IN THE WEST BOUNDARY LINE OF SAID 46.46 ACRE TRACT AND LYING IN THE WEST BOUNDARY LINE OF THAT CERTAIN 11.04 ACRE TRACT DESCRIBED IN A WARRANTY DEED IN LIEU OF FORECLOSURE FROM KENNETH KUNKEL AND WIFE, LINDA KUNKEL TO ARTHUR MIKESON MUREHEAD AND WIFE, CLARA MUREHEAD, DATED SEPTEMBER 6, 1990, AND BEING OF RECORD IN VOLUME 2664, PAGE 423, DEED RECORDS OF BELL COUNTY, TEXAS; SAID 5/8" IRON ROD FOUND BEING THE NORTHWEST CORNER OF THAT CERTAIN 1.70 ACRE TRACT (EXHIBIT "A") DESCRIBED IN A WARRANTY DEED FROM ARTHUR MIKESON MUREHEAD AND WIFE, CLARA MUREHEAD TO BILL M. HARTWELL DATED MARCH 29, 1995 AND BEING OF RECORD IN VOLUME 3291, PAGE 543, DEED RECORDS OF BELL COUNTY, TEXAS FOR CORNER;

THENCE N. 19°00'00" E., (BEARING BASE) 408.31 FEET WITH SAID WEST BOUNDARY LINES AS FENCED AND EVIDENCED ON THE GROUND TO A 1/2" IRON FOUND FOR CORNER;

THENCE S. 86°04'01" E., (CALLS S. 86°06' E.) 9.08 FEET (CALLS 9.1 FEET) AS FENCED AND EVIDENCED ON THE GROUND TO A 1/2" IRON ROD FOUND FOR CORNER;

THENCE N. 11°04'00" E., (CALLS N. 12°36' E.) 176.32 FEET AS FENCED AND EVIDENCED ON THE GROUND TO A 1/2" IRON ROD SET AT THE CENTER OF AN UNNAMED TRIBUTARY OR CREEK FOR CORNER;

THENCE DEPARTING FROM SAID WEST BOUNDARY LINES AND WITH SAID TRIBUTARY OR CREEK THE FOLLOWING FOUR (4) CALLS:

(1)     S. 56°41'19" E. 118.49 FEET TO A 1/2" IRON ROD SET FOR CORNER;

(2)     N. 87°08'00" E. 41.96 FEET TO A 1/2" IRON ROD SET FOR CORNER;

(3)     S. 54°21 '45" E., 158.93 FEET TO A 1/2" IRON ROD SET FOR CORNER;

(4)   S. 34°03'56" E., 130.56 FEET TO A 1/2" IRON ROD SET IN THE EAST BOUNDARY LINE OF SAID 11.04 ACRE TRACT AND BEING THE WEST BOUNDARY LINE OF THAT CERTAIN 16.479 ACRES OF LAND DESCRIBED IN A CONTRACT OF SALE AND PURCHASE FROM TEXAS VETERANS LAND PROGRAM TO WILLIAM HARVEY HARPER DATED SEPTEMBER 30, 1983 AND BEING OF RECORD IN VOLUME 1982, PAGE 832, DEED RECORDS OF BELL COUNTY, TEXAS FOR CORNER;

THENCE S. 15°43'07" W. (DEED CALL IN VOLUME 1982, PAGE 832) (CALLS S. 18°24'30" W., IN VOLUME 2664, PAGE 423) 22.87 FEET WITH THE COMMON BOUNDARY LINES AS FENCED, AND EVIDENCED ON THE GROUND TO A 1/2" IRON ROD SET AT THE MOST EASTERLY SOUTHEAST CORNER OF SAID 11.04 ACRE TRACT AND BEING IN THE NORTH BOUNDARY LINE OF THAT CERTAIN 4 ACRES OF LAND DESCRIBED IN A WARRANTY DEED WITH VENDOR'S LIEN FROM ARTHUR MIKESON MUREHEAD, AND WIFE CLARA MUREHEAD TO WILLIAM H. HARPER AND WIFE, VERA A. HARPER DATED DECEMBER 16, 1983 AND BEING OF RECORD IN VOLUME 1963, PAGE 88, DEED RECORDS OF BELL COUNTY, TEXAS FOR CORNER;

THENCE N. 71°35'30" W., 200.85 FEET DEPARTING FROM SAID WEST BOUNDARY LINE AND WITH SAID NORTH BOUNDARY LINE AND WITH A SOUTHERLY BOUNDARY LINE OF SAID 11.04 ACRE TRACT TO A 1/2" IRON ROD SET FOR ALL CORNER;

THENCE S. 18°24'30" W., 221.50 FEET WITH THE MOST WESTERLY WEST BOUNDARY LINE OF SAID TRACT DESCRIBED IN VOLUME 1963, PAGE 88 AND EAST BOUNDARY LINE OF SAID 11.04 ACRE TRACT TO A 1/2" IRON ROD FOUND AT A 3" METAL POST BEING THE MOST WESTERLY SOUTHWEST CORNER OF SAID TRACT DESCRIBED IN VOLUME 1963, PAGE 88; SAID 1/2" IRON ROD FOUND BEING THE NORTHEAST CORNER OF SAID 1.70 ACRE TRACT FOR CORNER;

THENCE N. 71°21'50" W. 197.38 FEET, (CALLS N. 71°28' W. 197.5 FEET IN VOLUME 3291, PAGE 543) DEPARTING FROM AN EAST BOUNDARY LINE OF SAID 11.04 ACRE TRACT AND WITH THE NORTH BOUNDARY LINE OF SAID 1.70 ACRE TRACT TO THE POINT OF BEGINNING AND CONTAINING 3.877 ACRES OF LAND.

TRACT 2:

BEING 1.275 ACRES OF LAND, MORE OR LESS, OUT OF THE H.B. BALCH SURVEY, ABSTRACT 976, BELL COUNTY, TEXAS, BEING OUT OF AND A PART OF LOT ONE (1), BLOCK ONE (1), SHADY CREEK SUBDIVISION, A SUBDIVISION IN BELL COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT OF RECORD IN CABINET C, SLIDE 71-A, PLAT RECORDS OF BELL COUNTY, TEXAS, DESCRIBED BY METES AND BOUNDS IN FIELD NOTES ATTACHED HERETO.

TRACT 3:

BEING 0.387 ACRES OF LAND, MORE OR LESS, OUT OF THE H.B. BALCH SURVEY, ABSTRACT 976, BELL COUNTY, TEXAS, BEING OUT OF AND A PART OF LOT ONE (1), BLOCK ONE (1), SHADY CREEK SUBDIVISION, A SBUDIVISION IN BELL COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT OF RECORD IN CABINET C, SLIDE 71-A, PLAT RECORDS OF BELL COUNTY, TEXAS, DESCRIBED BY METES AND BOUNDS IN FIELD NOTES ATTACHED HERETO.

TRACT 4:

ACCESS EASEMENT BEING 1.00 ACRE OF LAND, MORE OR LESS, OUT OF THE H.B. BALCH SURVEY, ABSTRACT 976, BELL COUNTY, TEXAS, DESCRIBED BY METES AND BOUNDS IN FIELD NOTES ATTACHED HERETO.

34.     The description of the Property used in the Deed of Trust mistakenly included only Tract 1. Such was a mutual mistake. Owing to the mutual mistake, Plaintiff is entitled to a reformation of the legal description of the Property in the Deed of Trust.

35.     All conditions precedent have been performed of have occurred.

**B. Declaration of Lien Interest on Manufactured Home Under Texas Finance Code Section 347.455**

36.     The foregoing paragraphs are incorporated by reference for all purposes.

37.     Pursuant to Texas Finance Code section 347.455, Plaintiff seeks a declaration that the Loan Agreement grants Plaintiff a security interest in the Manufactured Home.

38.     Pursuant to Texas Finance Code section 347.455(b)(2), if real property is included in the cash price of a transaction, the creditor may elect to treat a manufactured home as if it were

residential real property for all purposes in connection with the credit transaction by disclosing that election to the consumer. *See* TEX. FIN. CODE § 347.455(b)(2).

39.     Here, there is no doubt that Plaintiff satisfied the requirements of 347.455(b)(2). Proceeds of the loan were used to pay off the lien on the manufactured home.  Further, Plaintiff made such an election to treat the manufactured home as if it were residential real property in the Deed of Trust.  The Deed of Trust expressly states that Plaintiff's lien encumbers real property, "TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, and fixtures now or hereafter a part of the property."  Exh. F at p. 2. As shown in the Appraisal produced as part of the Loan Agreement, shows the Manufactured Home was part of the property at the time the Loan Agreement originated. Exh. J. Therefore, because Plaintiff elected to include the manufactured home as part of the real property, Plaintiff is entitled to a declaration that Plaintiff's holds a lien interest on the Manufactured Home under the Deed of Trust.

40.     All conditions precedent have been performed of have occurred.

## C.   Declaration of Lien Interest on Manufactured Home by Equitable and Contractual Subrogation

41.     The foregoing paragraphs are incorporated by reference for all purposes.

42.     Under equitable and contractual subrogation Plaintiff possess the rights of Vanderbilt, the purchase-money lienholder of the Manufactured Home. Because proceeds from the Loan Agreement were used to pay off Vanderbilt's purchase-money lien on the Manufactured Home, Plaintiff steps into the shoes of Vanderbilt as the purchase money lienholder with a security interest in the Manufactured Home. *See NSEW Holdings LLC v. Wells Fargo Bank, N.A.*, Civil Action No. 4:15-CV-828, 2017 U.S. Dist. LEXIS 38337, at *7 (E.D. Tex. Mar. 17, 2017). The Loan Agreement provides that the lender is subrogated to the rights of previous lienholders. Exh.

F ¶26. Plaintiff seeks a declaration from this Court that Plaintiff has a valid lien interest in the Manufactured Home by contractual subrogation pursuant to the terms of the Loan Agreement.

43.     Funds disbursed by Plaintiff's predecessor in interest under the Loan Agreement were applied to pay off Vanderbilt's lien on the Manufactured Home. Exh. L. Equitable subrogation "allows a lender who discharges a valid lien on the property of another to step into the prior lienholder's shoes and assume that lienholder's security interest in the property." *Fed. Home Loan Mortg. Corp. v. Zepeda*, 601 S.W.3d 763, 766 (Tex. 2020). Plaintiff seeks a declaration from the Court that Plaintiff has a valid lien interest in the Manufactured Home by equitable subrogation through the discharge of Vanderbilt's lien.

### D.  Enforcement of Statutory Probate Lien

44.     The foregoing paragraphs are incorporated by reference for all purposes.

45.     Plaintiff seeks a declaration that Plaintiff has a statutory probate lien against the Property under the terms of the Loan Agreement and the Texas Estates Code. Texas Estates Code sections 101.001 and 101.051 provide that the estate of a person who dies vests immediately in the person's heirs at law, subject to the payment of and still liable for the deceased person's debts.

46.     Through Plaintiff's statutory probate lien, reserved in Texas Estates Code sections 101.001 and 101.051, Plaintiff has an enforceable and superior lien against the interests in the Property of the Defendants, who are Decedents' heirs. Because of a material breach of the Loan Agreement, Plaintiff seeks to enforce its statutory probate lien against the interests in the Property of Decedents' Heirs in accordance with the terms of the Loan Agreement and Texas Property Code section 51.002 or through a judgment foreclosing the lien and an order of sale.

47.     All conditions precedent have been performed of have occurred.

### E.  Foreclosure

48.     The foregoing paragraphs are incorporated by reference for all purposes.

49.     Because of a material breach of the Loan Agreement, Plaintiff seeks an order from this Court to enforce its statutory probate lien through non-judicial foreclosure pursuant to the terms of the Loan Agreement and Texas Property Code section 51.002 with respect to all Defendants, who acquired the Property subject to Decedents' debts.

50.     Because of the material breach of the Loan Agreement, a public auction of the Property in conjunction with all other regularly scheduled non-judicial foreclosure sales on the first Tuesday of the month would provide the most practical, efficient and effective means to enforce Plaintiff's security interest in the Property. Because the rights, responsibilities and duties of the lender and the trustee are well known under Texas Property Code section 51.002 and Texas case law, a public auction conducted in the same manner as a non-judicial foreclosure sale would meet all constitutional standards of due process. Since no personal liability is sought against Defendants, a public auction of the Property would be the most expedient means to put the Property back into the stream of commerce, as well as into the housing stock of the community.

51.     In the alternative, Plaintiff seeks a judgment for foreclosure together with an order of sale issued to the U.S. Marshal, directing the U.S. Marshal to seize and sell the Property in satisfaction of the Loan Agreement debt.

52.     All conditions precedent have been performed of have occurred.

**F.   Breach of Contract**

53.     The foregoing paragraphs are incorporated by reference for all purposes.

54.     Plaintiff asserts a cause of action for breach of contract against Defendants. The Loan Agreement is a contract and Plaintiff performed its obligations fully under it. Decedents and Defendants breached the contract by failing to substantially perform material obligations required under it (principally, the payment of amounts due under the Note). Such breach is the proximate cause of injury and damages to Plaintiff. For these damages, Plaintiff seeks a judgment of foreclosure of the Property.

55.     All conditions precedent have been performed of have occurred.

**G.  <u>Trespass to Try Title</u>**

56.     The foregoing paragraphs are incorporated by reference for all purposes.

57.     Concurrent with Plaintiff acquiring all of Defendants' right, title, and interest in the Property by enforcement of Plaintiff's statutory probate lien by non-judicial foreclosure, public auction, or a judgment foreclosing Plaintiff's lien and on order of, Plaintiff seeks a declaration and judgment, that the Defendants are divested of all of their right, title, and interest in the Property and that all of Defendants' right, title, and interest in the Property are vested in Plaintiff. Title as to both Plaintiff and Defendants is derived from a common source.

58.     All conditions precedent have been performed of have occurred.

**H.  <u>Attorneys' Fees</u>**

59.     The foregoing paragraphs are incorporated by reference for all purposes.

60.     Because of the material breach of the Loan Agreement, Plaintiff is entitled to recover reasonable and necessary attorneys' fees under the terms of the Loan Agreement and Texas Civil Practice and Remedies Code sections 37.009 and 38.001 and to the extent allowed under Section 50(a)(6), Article XVI of the Texas Constitution. Attorneys' fees are not sought as a personal judgment against the Defendants, but only as an additional debt secured by the Deed of Trust.

61.     All conditions precedent have been performed of have occurred.

**PRAYER**

For these reasons, Plaintiff requests that Defendants be cited to appear and answer and that, upon final hearing, the Court enter judgment granting:

   a.   Reformation of the legal description in the Deed of Trust to reflect the proper legal description in the Commitment;

   b.   A judgment permitting foreclosure on the Property as it is described in the Commitment;

c.  A declaration that Plaintiff's security interest in the Property includes a security interest in the Manufactured Home;

d.  A declaration that Decedents' heirs-at-law have been made parties to this suit and are vested with Decedents' right, title and interest in the Property;

e.  A declaration that due to a breach of the Loan Agreement, Plaintiff's statutory probate lien against the Property shall be enforced by a foreclosure or public auction; or alternatively, a judgment for judicial foreclosure; and that through the foreclosure or auction the Defendants are divested and the purchaser at the foreclosure sale is vested with all of Decedents' right, title, and interest to the Property and the Manufactured Home;

f.  A writ of possession against any Occupant of the Property who fails or refuses to leave the Property after foreclosure or auction;

g.  Attorneys' fees and costs of suit, not as a personal judgment against Defendants but only as an additional debt secured by the Deed of Trust; and

h.  All other relief, in law and in equity, to which Plaintiff is entitled.

Respectfully submitted,

By: */s/ Mark D. Cronenwett*
**MARK D. CRONENWETT**
Texas Bar No. 00787303
mcronenwett@mwzmlaw.com

**PHILIP W. DANAHER**
Texas Bar No. 24078395
pdanaher@mwzmlaw.com

**MACKIE WOLF ZIENTZ & MANN, P.C.**
14160 N. Dallas Parkway, Suite 900
Dallas, Texas 75254
214-635-2650 (Phone)
214-635-2686 (Fax)

*Attorneys for Plaintiff*